Charles H. McGUIRE and Alice
H. McGuire, Husband and
Wife, Appellants,

v.

Daniel SHUBERT and Deborah A.
Shubert, Husband and Wife, and
Mellon Bank, N.A., Appellees.

Superior Court of Pennsylvania.

Argued Nov. 5, 1998.

Filed Dec. 23, 1998.

Anthony F. Jeselnik, Pittsburgh, for appellants.

Susan Mahood, Pittsburgh, for appellees.

Before CAVANAUGH, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

Appellants, Charles and Alice McGuire ("the McGuires"), appeal from an order that sustained preliminary objections to, and dismissed with prejudice, four counts of their amended civil complaint. On appeal, the McGuires raise two issues concerning whether the trial court erred in concluding that the conduct alleged in the amended complaint and harm which allegedly resulted to the McGuires from this conduct, was not actionable. We reverse and remand the matter to the trial court in accordance with the discussion that follows.

The McGuires own property adjacent to property owned by Appellees Daniel Shubert and Deborah Shubert ("the Shuberts"). In 1991, the Shuberts filed a complaint in equity with regard to the McGuires' property, claiming that the McGuires had violated the Dam Safety and Encroachment Act, 32 P.S. §§ 693.1–693.27, by creating a dam on their property. The equity court entered a final decree requiring the McGuires to take remedial action with regard to the dam situation and assessing the costs against the McGuires. On appeal, this Court affirmed. *See Shubert v. McGuire*, —— A.2d ——, No. 1343 Pittsburgh 1997 (Memorandum decision filed August 31, 1998).[1]

After the trial in the equity litigation, but prior to the appeal in that matter, the

---

1. Reargument was denied on November 6, 1998.

McGuires instituted a civil action (the subject of the present appeal) against the Shuberts and Mellon Bank, N.A. ("Mellon").[2] The complaint set forth the following counts against the Shuberts: breach of confidentiality, misuse of confidential account information, invasion of privacy, and conspiracy. The complaint also stated the following separate counts against Mellon: breach of duty to protect confidential bank account information, denial of privacy, breach of contract of deposit, and *respondeat superior.*

The complaint alleged that the McGuires had maintained various accounts with Mellon at the time of the equity trial. The complaint also alleged that Deborah Shubert was employed at Mellon while the equity action was pending in the trial court and that Deborah Shubert had accessed the McGuires' account information through her employment at Mellon. Further, the complaint alleged that the Shuberts conveyed the McGuires' account information to the Shuberts' attorney, who in turn was permitted to use the account information during the equity trial in cross-examining Charles McGuire regarding the McGuires' net worth.

Mellon filed an answer with new matter to the complaint averring, *inter alia,* that Deborah Shubert was employed by Mellon prior to and during the equity trial, and that at the time of the trial, she was a telephone sales representative in the telephone banking department. Mellon further admitted that Deborah Shubert had access to information with regard to the McGuires' accounts, but did not admit that she accessed the accounts through her position.

The Shuberts filed preliminary objections in the nature of a demurrer and a motion for a more specific pleading. These motions were sustained. The McGuires subsequently filed an amended complaint raising the same counts as the initial complaint. The amended complaint alleged that the McGuires were economically harmed in that the equity court ruled against them based, in part, on its admission of the bank account information.

The McGuires also claimed that they were emotionally harmed and that Charles McGuire had to be treated at a hospital for breathing difficulties on two occasions after the equity trial as the result of his mental distress and anguish. Further, the McGuires sought punitive damages.

The Shuberts filed preliminary objections in the nature of a demurrer to the amended complaint. In considering the preliminary objections, the trial court ruled that the causes of action against the Shuberts were not properly alleged, because the nature of the harm suffered was covered by the absolute immunity discussed in *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950 (Pa.Super.1988). Trial Court Opinion, 6/16/98, at 13. The trial court entered an appealable final order, sustaining the preliminary objections and dismissing the action against the Shuberts, and stating that an immediate appeal would facilitate the resolution of the entire case. *See* Pa.R.A.P. 341(c). The McGuires then filed this timely appeal.[3]

On appeal, the McGuires contend that the trial court erred in concluding that the Shuberts were absolutely immune from civil liability for their conduct and that the McGuires, therefore, did not suffer actionable harm. The McGuires contend that the bank and its employees had an implied duty of confidentiality to bank customers that was breached in this matter. The McGuires assert that the trial court should have recognized the cause of action for a breach of this duty in the instant case and the related causes of action raised in the amended complaint.

Our standard of review was set forth in *American Housing Trust, III v. Jones,* 548 Pa. 311, 316, 696 A.2d 1181, 1183 (1997), as follows:

> In order to determine whether the trial court properly sustained Appellee's preliminary objections, this court must consider as true all of the well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn

---

**2.** The McGuires initially commenced the action by a writ of summons, and subsequently filed a complaint.

**3.** Although Mellon is listed in the caption as an Appellee, Mellon is not participating in this appeal.

from those facts. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996). Pa.R.C.P. 1028(c) provides that if an issue of fact is raised in preliminary objections, the trial court shall consider evidence "by depositions or otherwise". In conducting our appellate review, we observe that preliminary objections, the end result of which would be dismissal of the action, may be properly sustained by the trial court only if the case is free and clear of doubt. *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 235 A.2d 576 (1967).

*American Housing*, 548 Pa. at 316, 696 A.2d at 1183.

 To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. *See Vitteck v. Washington Broadcasting Co., Inc.*, 256 Pa.Super. 427, 389 A.2d 1197, 1199 (Pa.Super.1978). Any doubt should be resolved by a refusal to sustain the objections. *Id.*

We first must address the novel issue of whether a cause of action for a breach of a duty of confidentiality to a bank customer exists in this Commonwealth. Based on common law principles of contract and agency, a number of jurisdictions have held that a bank has an implied contractual duty, as a matter of law, to keep financial information concerning a depositor confidential. *See, e.g., Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla.1986); *Indiana National Bank v. Chapman*, 482 N.E.2d 474 (Ind.App.1985); *Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758 (1979); *Graney Development Corp. v. Taksen*, 92 Misc.2d 764, 400 N.Y.S.2d 717, *aff'd* 66 A.D.2d 1008, 411 N.Y.S.2d 756 (App.Div. 1978); *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 244 N.W.2d 648 (1976); and *Peterson v. Idaho First Nat. Bank*, 83 Idaho 578, 367 P.2d 284 (1961).[4]

In *Indiana National Bank*, the Court of Appeals of Indiana for the Fourth District turned to English common law in addressing a bank's duty of confidentiality:

> The first case to address a bank's obligation of confidence was *Tournier v. National Provincial & Union Bank of England*, (1923), 1 K.B. 461. In that case the plaintiff failed to make good on an overdraft of his account. The Bank called his employer and disclosed that one of Tournier's checks had been made out to a bookmaker's account. As a consequence of the Bank's disclosure, Tournier was fired.
>
> The *Tournier* court held that the Bank had breached an implied contract not to disclose such information, ... stating:

> > The Court will only imply terms which must necessarily have been in the contemplation of the parties in making the contract. Applying this principle to such knowledge of life as a judge is allowed to have, I have no doubt that it is an implied term of a banker's contract with his customer that the bank shall not disclose the account or, transactions relating thereto, of his customer....

> *Id.* 482 N.E.2d at 480.

*Indiana National Bank*, 482 N.E.2d at 480.

Moreover, in *Peterson*, the Supreme Court of Idaho, in addressing a bank's duty of confidentiality, explained:

> It is generally stated that the relation between a bank and its general depositor is that of debtor and creditor.... But it is also said that in discharging its obligation to a depositor a bank must do so subject to the rules of agency.

> . . .

> All agree that a bank should protect its business records from the prying eyes of the public, moved by curiosity or malice. No one questions its right to protect its fiduciary relationship with its customers, which, in sound banking practice, as a

**4.** The courts that have addressed this question disagree, however, on the particular circumstances, if any, under which a bank and its employees may disclose the information, in the absence of the customer's consent, without breaching the duty under exceptions to the general rule. The Shuberts have not alleged that any exception recognized by case law exists in this matter, but, rather, argue that the trial court properly extended the doctrine of absolute immunity herein.

matter of common knowledge, is done everywhere.

...

To give such information to third persons or to the public at the instance of the customer or depositor is certainly not beyond the scope of banking powers. It is a different matter, however, when such information is sought from the bank without the consent of the depositor or customer of the bank. Indeed, it is an implied term of the contract between the banker and his customer that the banker will not divulge to third persons, without the consent of the customer, express or implied, either the state of the customer's account or any of his transactions with the bank, or any information relating to the customer acquired through the keeping of his account....

It is inconceivable that a bank would at any time consider itself at liberty to disclose the intimate details of its depositors' accounts. Inviolate secrecy is one of the inherent and fundamental precepts of the relationship of the bank and its customers or depositors.

*Peterson*, 367 P.2d at 290 (quotations omitted). *See also Suburban Trust*, 408 A.2d at 762 (relying, *inter alia*, on *Tournier* and *Peterson* to establish an implied duty of nondisclosure for a bank)

Further, the bank's duty has been extended to bank employees. *See Peterson*, 367 P.2d at 290 (stating it is implicit in the contract of the bank and its customer that information concerning the customer's account may not be disclosed to a third party by the bank or the bank's employees).

▮▮ Although the appellate courts in Pennsylvania have not previously addressed the issue of whether a bank is under a duty of confidentiality to its customer, it is established in Pennsylvania that the legal relationship between a financial institution and its depositors is based on contract. *First Federal Savings and Loan Association of Hazelton v. Office of the State Treasurer*, 543 Pa. 80, 83, 669 A.2d 914, 915 (1995). We find that the duty on a bank and its employees to keep a customer's bank account information confidential, which has long been recognized by the above-mentioned jurisdictions, is present as an implied contractual duty under Pennsylvania common law, as well.

We next turn to an examination of whether the trial court erroneously applied the doctrine of absolute immunity in *Moses* to the present case. In *Moses*, this Court addressed the question of whether a patient stated a cause of action for breach of confidentiality based on her treating physician's unauthorized, and judicially unsupervised, communications with the patient's adversary in a pending medical malpractice action. The majority of this Court in *Moses* held that the patient had not alleged a viable cause of action. We based this decision, *inter alia*, on the policy of granting persons immunity from civil liability for statements made in the regular course of judicial proceedings, where the statements were pertinent and material to the litigation at hand. *Moses*, 549 A.2d at 956.

This Court in *Moses* reasoned that the patient had reduced the expectation of privacy in her medical information by filing the underlying malpractice action because she had put her physical condition at issue. The majority further reasoned that a patient should not be allowed to control to her advantage the timing and circumstances of information she must inevitably see revealed at some point in the litigation. *Id.* 549 A.2d at 959. We explained in *Moses* that the policy behind the privilege is "to leave reasonably unobstructed the paths which lead to the ascertainment of truth, and to encourage witnesses to give 'complete and unintimidated testimony'". *Id.* 549 A.2d at 957 (quotation omitted). Further, this Court in *Moses* stated that this policy should not be circumvented by affording the patient an unrestricted cause of action for breach of confidentiality in a separate lawsuit.

▮▮ We find that the policy bases for applying the doctrine of absolute immunity in *Moses* are not present in the instant appeal. The McGuires did not have a reduced expectation of privacy in their bank accounts because of the equity litigation. Unlike the patient in Moses, the McGuires did not initi-

ate the equity litigation against the Shuberts. The McGuires' bank account information was not necessarily the type of information which inevitably had to be revealed in litigation concerning whether the McGuires had committed a violation of the Dam Safety and Encroachment Act by constructing a dam on their property. That the Shuberts made permissible use of the information does not sanitize their conduct in acquiring it in the first instance. Moreover, the Shuberts simply put the McGuires' confidential bank account information to their own use at the equity trial, a use which, at least, arguably had no relationship to the reason why the McGuires had entrusted the information to Mellon and its employees in their contractual capacity. The McGuires had no reason to expect that their opponent in the equity action could have access to their confidential financial information and introduce that information in the litigation without going through appropriate legal discovery actions.

▮ Accordingly, this Court holds that the trial court erred in applying the doctrine of absolute immunity to the instant case to sustain the Shuberts' preliminary objections. Based on the foregoing discussion, we find that there were sufficient facts pled in the amended complaint from which it could be concluded that the Shuberts committed a breach of confidentiality and misused the McGuires' bank account information with Mellon.

▮ Further, we find that the trial court erred in sustaining the preliminary objections to the count alleging that the Shuberts committed an invasion of privacy. In order to state a cause of action for invasion of privacy, the McGuires had to aver that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person. *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109, 1114 (Pa.Super.1985) (citing *Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (Pa.Super.1984), and *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 125 A.2d 644 (Pa.Super.1956)). Further, the McGuires had to aver sufficient facts which could establish that the information disclosed would have caused mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Id.*

▮ We find that the amended complaint averred sufficient facts which could establish that the Shuberts' alleged invasion of privacy was substantial, as it involved the Shuberts acquiring knowledge about the McGuires' financial holdings with Mellon. Further, the facts averred by the McGuires could establish that the invasion of privacy alleged would be highly offensive to a reasonable person, in that the security of the bank information not only was invaded but also was introduced against the McGuires' interests in litigation between the parties. Additionally, the amended complaint averred sufficient facts from which it could be concluded that the bank account information being disclosed against the McGuires in litigation would cause mental suffering to a person of ordinary sensibilities. Thus, the amended complaint pled a claim for invasion of privacy against the Shuberts.

▮ Moreover, we find that the trial court erred in concluding that the amended complaint failed to aver sufficient facts to establish that the Shuberts committed civil conspiracy. In order to state a civil action for conspiracy, the McGuires were required to allege:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*Kadel v. McMonigle*, 425 Pa.Super. 253, 624 A.2d 1059, 1063 (Pa.Super.1993). Here, the amended complaint alleged that the Shuberts acted with a common purpose to invade the privacy of the McGuires, to commit an unlawful breach of confidential bank account information, and to misuse this information. The McGuires' amended complaint also alleged that the McGuires sustained actual legal damages. Thus, a cause of action for conspiracy was pled.

We accordingly reverse the order and remand the matter to the trial court for further

proceedings in accordance with this memorandum.

Order reversed; case remanded to the trial court. Jurisdiction relinquished.