**Mark B. ARONSON and Joseph G., Kanfoush, Appellant,**

v.

**SPRINT SPECTRUM, L.P., and Sprint, Communications Company, L.P. Each Individually and Doing Business as Sprint, Sprint PCS and Sprint Personal Communication Services, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2000.

Filed Jan. 16, 2001.

Mark B. Aronson and Joseph ·G. Kanfoush, appellants, pro se.

W. Gregory Rhodes, Pittsburgh, for appellee.

BEFORE: KELLY, MUSMANNO, and ORIE MELVIN, JJ.

KELLY, J.:

¶ 1 Appellants, Mark B. Aronson and Joseph G. Kanfoush, ask us to determine whether the trial court properly dismissed their single count equity complaint for lack

of subject matter jurisdiction. We hold that Sprint's wireless services provider, Sprint Spectrum, is not regulated by the Commonwealth and that the Federal Communications Commission ("FCC") is the proper forum to address Appellants' claim. We further hold that Appellant has not made out a *prima facie* claim for invasion of privacy. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal were set out in part by the federal court as follows:

> On or about September 23, 1999, [Appellants] commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging invasion of privacy. [Appellants] claimed that [Appellees'] account system improperly allowed any person access to personal, confidential information. Specifically, [Appellants] asserted that Sprint customers who accessed their account information via the internet or the Sprint toll-free customer service number (when answered by a live person) were required to provide a predesignated secret account password ("PIN"). However, those persons accessing the toll-free number and using automated customer service, or any person with a wireless telephone that works on the Sprint network who dials "2 TALK," "2 SEND," "2 OK," or "2 CALL," could access the account information by imputing the five digit post office zip code of the address where Sprint mails the monthly statement for that Sprint telephone number. [Appellants] asserted that a third party **could** gain access to any Sprint customer's account if the third party knew the telephone number and billing address zip code for that customer, without using a PIN. Notwithstanding this practice, [Appellants] did not allege that any third party had gained access to their private accounts.

> On or about October 29, 1999, Sprint removed the action to federal court, asserting federal preemption of [Appellants'] state law claims. Thereafter, Sprint filed the pending motion to dismiss claiming that [Appellants] state law claim is preempted by section 222 of the Federal Telecommunications Act of 1996 and that any claim[s] for injunctive relief [Appellants] might subsequently seek are unavailable because [Appellants] had not exhausted available administrative remedies. [Appellants] filed a motion to remand the action, contending that the court lacks jurisdiction to address the issues raised in the state court complaint.

*Aronson v. Sprint Spectrum, L.P.,* 90 F.Supp.2d 662, 663 (W.D.Pa.2000) (citation omitted) (emphasis added). The federal court noted that generally a case may not be removed by a defendant to federal court on the basis of a federal question defense, including the defense of preemption, unless the federal question is presented on the face of a properly pleaded complaint. However, the court explained, an exception known as the doctrine of "complete preemption," provides for removal when Congress intends to so completely occupy a particular area that any civil complaint raising a select group of claims is deemed federal in character.[1] The federal court also noted that the scope of the complete preemption doctrine is narrow. Following careful analysis, the federal court found that removal of Appellants' action to federal court by Appellees as defendants was improper, because Ap-

---

1. Federal courts employ a two-part test to determine if federal law or regulation intends complete preemption. First, a defendant must show that the purported preempting statute contains "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988). If this prong is satisfied, the district court must determine whether there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* In the context of a motion for remand, all doubts should be resolved against removal and in favor of remand to state court. *Aronson, supra* at 665.

pellant's claim was not "completely preempted" by § 222 of the Federal Telecommunications Act ("FTA"). *Id.* at 669. Therefore, the court denied Appellees' motion to dismiss, and granted Appellants' motion for remand to state court. *Id.*

¶ 3 Upon remand, Appellees filed preliminary objections to Appellants' complaint. Appellees objected on the basis of subject matter jurisdiction, asserting that Section 222 and its regulations under the FTA, promulgated by the FCC, controls. Appellees maintained that the federal statute expressly reserves to the FCC the authority to seek injunctive relief in federal district court. To obtain injunctive relief, Appellees argued, a private party must pursue the statute's prescribed administrative procedures and request the FCC to take appropriate action, depending on the relief requested. Appellees concluded that the statute preempted Appellants' state common law claim for invasion of privacy.

¶ 4 In opposition to the preliminary objections, Appellants claimed that the federal statute expressly relinquishes jurisdiction over matters which are subject to regulation by a state commission or local government. Appellants concluded that Appellees had failed to show they were not regulated by the PUC. Further, Appellants maintained that they had filed a formal complaint before the Pennsylvania Public Utility Commission ("PUC") seeking similar equitable relief.

¶ 5 The trial court sustained Appellees' preliminary objections. The court determined that it lacked subject matter jurisdiction over the dispute because Appellants' state common law claim was preempted by Section 222 of the FTA. Therefore, the court dismissed Appellants' complaint with prejudice. *Id.* This timely appeal followed. During the pendency of this appeal, the PUC held that it did not regulate Sprint's wireless services and recommended that Appellants pursue their claim through Section 222 of the FTA.

¶ 6 Appellants raise the following issue for our review:

DID THE [TRIAL] COURT ERROR (SIC) IN SUSTAINING [APPELLEES'] PRELIMINARY OBJECTIONS AND DISMISSING THE COMPLAINT IN EQUITY FOR LACK OF SUBJECT MATTER JURISDICTION WHEN THERE IS NOTHING OF RECORD THAT INDICATES WHETHER OR NOT SPRINT IS "OTHERWISE A PUBLIC UTILITY" AS THE TERM "PUBLIC UTILITY" IS DEFINED IN 66 P.S. § 102(1)(VI) AND § 102(2)(IV)?

(Appellants' Brief at 4).

¶ 7 Appellants argue that Section 221 of the FTA contemplates jurisdiction in state courts over a cause of action if the telecommunications carrier involved is regulated by a state agency. Appellants contend that if the PUC regulates Sprint's wireless services provider, the state courts have jurisdiction over Appellants' claim. Appellants further assert that the PUC regulates Sprint's wireless services provider because Sprint offers landline telecommunications services, which is an activity explicitly within the purview of the PUC. Appellants conclude that the state court has jurisdiction to hear their common law claim. Appellants also allege that in reaching its decision, the trial court improperly relied on footnote one in the federal court's opinion, which suggested that Sprint's wireless communications services are not regulated by the PUC. Appellants deduce that the trial court seized upon this footnote as instructional and concluded that the federal court had already decided the issue. Appellants conclude that this misconception led to the court's erroneous decision.[2] We disagree.

---

2. Appellants also claim that Appellees' preliminary objections were not properly endorsed with a notice to plead, as required by the applicable rules of civil procedure. *See*

Pa.R.C.P. 1028(a), Note. However, Appellants did not raise this objection before the trial court. Instead, Appellants answered the

 ¶ 8 Subject matter jurisdiction may be challenged by preliminary objections. Pa.R.C.P. 1028(a)(1). "When determining whether a trial court correctly decided the issue of subject matter jurisdiction, this Court will accept as true all facts averred in the complaint." *Fetterman v. Green*, 455 Pa.Super. 639, 689 A.2d 289, 291 (1997), *appeal denied*, 548 Pa. 648, 695 A.2d 786 (1997).

> When a party raises preliminary objections challenging subject matter jurisdiction, the trial court's function is to determine whether the law will bar recovery because of the lack of such jurisdiction. The action or inaction of the parties cannot bestow subject matter jurisdiction upon a court that otherwise lacks it. . . .
>
> Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject matter in a given case. . . . Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect. The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case.

*Bernhard v. Bernhard*, 447 Pa.Super. 118, 668 A.2d 546, 548 (1995) (internal citations and quotation marks omitted).

 ¶ 9 Additionally, to state a cause of action for invasion of privacy under Pennsylvania law, Appellants must allege that there was an **intentional** intrusion on the seclusion of their private information, which was "substantial and highly offensive to a reasonable person." *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa.Super.1998), *appeal denied*, 560 Pa. 707, 743 A.2d 921 (1999). Appellants must also allege that the matter was made known to preliminary objections on the merits. Thus,

the public at large. *Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984). Finally, Appellants must show "that the information disclosed would have caused mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McGuire, supra* at 1092.

 ¶ 10 In the present case, both parties acknowledge that the state court's jurisdiction over Appellants' claim depends on whether the PUC regulates Sprint's wireless services provider. While this appeal was pending the PUC determined that it does **not** regulate Sprint's wireless services provider. In so finding, the PUC reasoned:

> Section 102(1)(vi) of the Code, 66 Pa.C.S. § 102(1)(vi), defines "public utility" as any person or corporation owning or operating the Commonwealth equipment or facilities for:
>
>> Conveying or transmitting messages or communications, **except as set forth in paragraph (2)(iv),** by telephone or telegraph or domestic public land mobile radio service including, but not limited to, point-to-point microwave radio service for the public for compensation. (Emphasis added).
>
> However, an exception excludes from the definition of "public utility" "any person or corporation, **not otherwise a public utility,** who or which furnishes mobile domestic cellular radio telecommunications service." 66 Pa.C.S. § 102(2)(iv) (emphasis added). Stated differently, unless a provider of cellular service is "otherwise a public utility," it does not become a regulated public utility under this Commission's jurisdiction merely because it provides cellular service to the public for compensation.
>
> In *Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board,* 676 A.2d 1255 (Pa.Cmwlth.Ct.1996), the Commonwealth Court held that Bell Atlantic Mobile Systems, Inc., which provides cellu-

we accord this argument no worth.

lar telephone service, is not a "public utility." Instead, the Commonwealth Court concluded Bell Atlantic Mobile Systems, Inc. is a non-regulated private business entity that is not subject to filing rates and tariffs with the Commission. *Id.* at 1260. The Supreme Court of Pennsylvania affirmed the Commonwealth Court's decision in *Crown Communications v. Zoning Hearing Board of Glenfield,* 550 Pa. 266, 705 A.2d 427 (1997).

In the present case, all of the evidence supports finding the Complainants have contracted with and receive wireless service from Sprint Spectrum L.P., which provides wireless service to them as Sprint, Sprint Personal Communications Services or Sprint PCS. The evidence also is uncontroverted that Sprint, Sprint Personal Communications Services and Sprint PCS are only trade names and registered trademarks and do not identify legal entities. Therefore, the only legal entity from which the Complainants receive wireless service is Sprint Spectrum L.P., which is a non-regulated private business entity such as Bell Atlantic Mobile Systems, Inc., was in *Crown Communications, supra.*

Moreover, a wireless telephone service provider does not become a regulated public utility simply because the Commission regulates a related entity. In *Crown Communications,* Bell Atlantic Mobile Systems, Inc., like Sprint Spectrum, L.P. in this case, is related to a regulated public utility under the jurisdiction of this Commission, *i.e.,* Bell Atlantic Pennsylvania, Inc. in *Crown Communications,* and Sprint Communications Company, L.P. in the present case, respectively. *Id.* at 430, n. 1. Nevertheless, the Supreme Court ruled in *Crown Communications,* that Bell Atlantic–Pennsylvania, Inc.'s regulated status did not confer regulated status on its affiliate, Bell Atlantic Mobile Systems, Inc. As a result, while the Commission regulates the former, it does not regulate the latter entity. In a similar fashion, the regulated status of Sprint Communications Company, L.P. does not confer regulated status on its affiliate, Sprint Spectrum, L.P.

Sprint Communications Company, L.P. is a certificated utility providing long distance telephone services, as well as competitive local telephone exchange services, within the Commonwealth of Pennsylvania. As such, it is a public utility that this Commission regulates. On the other hand, Spring Spectrum L.P. provides only wireless services and is not regulated by the Commission. Sprint Spectrum L.P. is affiliated with, but neither owned nor controlled by, Sprint Communications Company, L.P. All of the evidence demonstrates that Sprint Spectrum, L.P. is the entity responsible for recording, maintaining and disseminating information on the Complainants' accounts for wireless service. Sprint Spectrum, L.P. is the entity responsible for billing the Complainants for the wireless service they subscribe to. In fact, no evidence appears anywhere in this record to suggest that Sprint Communications Company, L.P. has any connection whatsoever to collecting, maintaining or disseminating information relating to the Complainants' wireless accounts. Thus, Sprint Spectrum, L.P. is not a "public utility" within the meaning of the Code and the Complainants fail to make any proffer that Sprint Communications Company, L.P. has in any way violated any provision of the Code that concerns them.

\* \* \*

[T]he complaint *sub judice* must be dismissed for lack of subject matter jurisdiction.

(PUC Opinion, dated October 4, 2000, at 12–14, 18) (emphasis in original). Thus, the PUC does not regulate Sprint's wire-

less services provider.[3] Accordingly, state court jurisdiction over Appellants' claim cannot be founded on state regulation of Sprint's wireless services provider.

¶ 11 Importantly, Section 222 of the FTA applies to Appellants' claim. That Section states in pertinent part:

(c) Confidentiality of customer proprietary network information

(1) Privacy requirements for telecommunications carriers

Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

* * *

(h) Definitions

As used in this section

(1) Customer Proprietary network information

The term "customer proprietary network information" means—

(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and

(B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier;

47 U.S.C. § 222. Suggesting Appellants' claim could be addressed through Section 222, the PUC reasoned:

[T]he [PUC] on July 17, 1997 proposed regulations to require the maintenance of electronic transaction auditing records with respect to data processing records and the maintenance of detailed records in any instance where customer information was disclosed to persons outside the telephone company, any government entity, or the telephone company security department. ***Pennsylvania Bulletin,*** Vol. 29, No. 43, pp. 5564–65 (October 23, 1999). While the Commission considered comments it received on the proposed regulations, the FCC proposed rules covering the same subject matter. ***Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information,*** CC Docket No. 96–115 (Orders Adopted May 16, 1996, February 19, 1998, May 21, 1998, September 23, 1998 and September 3, 1999). The FCC inquiry arose from a number of requests by local exchange carriers for classification of their responsibilities to protect customer proprietary network information ("CPNI"), which became pertinent with the passage of additional federal legislation.

Section 702 of the Telecommunications Reform Act of 1996 added Section 222 to the Communications Act of 1934, as amended. 47 U.S.C. § 222. Section 222 enjoins a duty upon every telecommunications carrier to protect the confidentiality of proprietary information. While Section 222 does not purport to preempt state authority to enforce laws, rules or regulations with respect to customer privacy, the FCC's orders imply that it may act in the future to preempt state

---

**3.** We note that in an appeal from an order dismissing a claim on the basis of preliminary objections, only the pleadings may be considered. However, the PUC decision is now the law with regard to this case. The parties to this appeal are bound by the PUC's determination. Accordingly, we consider that decision when resolving this appeal.

regulations in the event it perceives a conflict between its resolution of Section 222 CPNI issues and specific states regulations.

While noting the efforts of the FCC to approach the same issues in a national context that it had originally undertaken in its proposed rules to implement similar customer protections in this State, the Commission concluded:

> Since the issuance of our original proposed rulemaking, there have been vast changes in technology and business organization that have changed the national telecommunications industry. Cellular, PCS, and switched packet systems, including the Internet, carry an increasing share of voice communications. **While the FCC,** with authority based on the Federal Communications Act, **may have jurisdiction to regulate all these modes of communication, we do not** . We ought to and we do take heed of the changes wrought by technological progress and the FCC's ongoing rulemaking, along with the apparent lack of continuing local issues with regard to CPNI privacy. Prudence dictates that this proposed regulation be shelved pending resolution of CPNI issues at the federal level.
>
> Should the FCC abandon its efforts to prescribe adequate safeguards for sensitive customer information, we may revisit this issue. However, it does not appear necessary at this time to promulgate these proposed rules and we will therefore direct that this proceeding be closed. (Emphasis added).

*Pennsylvania Bulletin* at 5565. By declining to promulgate its own regulations on this subject, the Commission clearly and unambiguously has declined to embark upon regulating the type of CPNI privacy issues raised in the present case.

For all of the foregoing reasons, the Commission has no jurisdiction to re-view the subject matter of this complaint. As the Commission has suggested *supra,* the Complainants may wish to raise this matter in a complaint with the FCC.

(PUC Opinion, dated October 4, 2000, at 14–18). Moreover, when commenting on this issue, the federal court also concluded:

> Although [Appellants] have alleged a state law claim for invasion of privacy, this allegation appears, on its face, to present a direct challenge to Sprint's practice of disclosing customer information. Indeed, [Appellant's] state claim parallels a claim for a violation of the requirement imposed by Section 222, that a common carrier shall not disclose "or permit access to individually identifiable customer proprietary information." 47 U.S.C. § 222(c)(1). As a challenge to Sprint's practices by which a third party can access customer proprietary network information, Section 207 of the Act would provide [Appellants] with a federal cause of action for damages.

*Aronson, supra,* at 667. In addressing Appellants' issue on appeal, the trial court explained:

> [Appellants'] reliance on the Pennsylvania Public Utility Code, 66 Pa.C.S.A. § 101 *et seq.* was misplaced since mobile domestic cellular radio telecommunications were expressly excluded from the jurisdiction of the Pennsylvania Public Utility Commission. 66 Pa.C .S.A. § 102. We therefore look to the Federal Telecommunications Act of 1996(FTA) 47 U.S.C. § 151 *et seq.,* which as to privacy of customer information provides [quoting 47 U.S.C. § 222(c)(1) as quoted *supra* ]
>
> In addition, the [Appellants'] remedies as to their privacy rights are contained in Sections 205–209 of the Act. The FTA therefore impliedly preempts any [state] common law remedies of the [Appellants] and divests this court of proper subject matter jurisdiction to entertain their complaint. *Fetterman,* [*supra* ] . . . .

(Trial Court Opinion, filed June 2, 2000, at 2). We are inclined to agree with the reasoning of the PUC, the federal court and the trial court in the present case. Although couched in terms of a state law cause of action for invasion of privacy, Appellants' claim falls squarely within the conduct prohibited by Section 222 of the FTA.

¶ 12 Moreover, Appellants do not make out a state common law claim for invasion of privacy. To state such a claim, Appellants must allege, *inter alia*, that their private information has been disseminated to the public at large. *See Harris, supra.* They must also allege that they suffered harm by this dissemination and that Appellees' actions were intentional. *See McGuire, supra.* Here, Appellants did not allege that anyone has ever actually accessed their private information. *See Harris, supra.* Likewise, Appellants failed to aver that they have suffered damages associated with the access of their private information. *See McGuire, supra.* Therefore, Appellants did not set forth a cognizable state common law claim for invasion of privacy.

¶ 13 Based on the foregoing analysis, we conclude that the Commonwealth does not regulate Sprint Spectrum. We further hold that Appellants failed to set forth a *prima facie* claim for invasion of privacy. The collective decisions in this case direct Appellant to the FCC to obtain the injunctive relief they seek. We agree that the FCC is the proper forum to address Appellants' specific claim. Therefore, the trial court properly sustained Appellees' preliminary objections and dismissed Appellants' claim. Accordingly, we affirm.

¶ 14 Order affirmed.