# Lomeo v. Davis

C.P. of Lackawanna County, no. 99-CV-2639.

*Patrick E. Dougherty,* for plaintiffs.
*Laura J. Endler* and *Anthony J. Piazza Jr.,* for defendants Davis, Uroskie and Ob/Gyn Consultants Ltd.
*Richard K. Hodges,* for defendant Community Medical Center.

NEALON, *J.,* July 24, 2001—The defendants in this malpractice litigation have filed motions for summary judgment seeking to dismiss this case on the grounds that it was not timely filed within the two-year statute of limitations. The reproduced record indicates that plaintiffs filed suit within two years of the date that a physician first informed them that the female plaintiff had suffered an injury, Sheehan's Syndrome, which resulted from severe blood loss and hemorrhagic shock following her Caesarean section procedure that had been performed or managed by the defendants 32 months earlier. Since reasonable minds could differ as to when the injury and its operative cause should have been discovered by a reasonably diligent patient, the timeliness of the plaintiffs' claims should be decided by a jury and the motions for summary judgment will therefore be denied.

## FACTUAL BACKGROUND

Plaintiff Natalie Lomeo, and her husband, Samuel Lomeo, have commenced this medical negligence action against Lomeo's treating physicians, defendant Harold Davis M.D., and defendant Theodore Uroskie M.D., t/a defendant, Ob/Gyn Consultants, who admitted Lomeo to defendant Community Medical Center on July 26, 1995, to deliver her third child via Caesarean section. Examining the record in a light most favorable to Lomeo, the materials which have been submitted for review reflect that Dr. Davis began the Caesarean section procedure at approximately 9 a.m., during the course of which he noted uterine atony which is known to cause increased blood loss. The physician's delivery note documented 800 ml. of blood loss during the surgery whereas the anesthesia record estimated the blood loss at 1,000 ml. Although Lomeo was transported to the recovery room at 11:15 a.m., Dr. Davis returned at 12:25 p.m. and manually evacuated "a large amount of lochia and clots" from Lomeo's uterus.

Immediately following the completion of the surgical procedure, the postpartum nursing staff noted that Lomeo continued to experience significant vaginal bleeding. In addition, she began to display hallmark signs of hypovolemic or hemorrhagic shock which were communicated by the nurses to Dr. Davis and Dr. Uroskie. Notwithstanding that fact, the attending physicians and hospital personnel neglected to transfuse any blood until 7:40 p.m. at which time Lomeo received her first of six units of blood.

Following her discharge from the CMC on August 1, 1995, Lomeo received postoperative treatment from Dr.

Davis and Ob/Gyn in August 1995, January 1996, July 1996, January 1997, July 1997 and January 1998. During those visits, she reported complaints of fatigue, weakness, dizziness, hair loss, amenorrhea (absence of menstrual periods), dyspareunia (pain with intercourse), and vasomotor symptomatology. Dr. Davis' working diagnoses at that time included possible chronic fatigue and "some type of hypothalamic dysfunction." (See Harold Davis M.D. deposition dated 2/3/00, pp. 56-60.) Based upon Dr. Davis' recommendation, Lomeo was eventually examined by an endocrinologist, K. Anega M.D., on March 23, 1998, who diagnosed her as suffering from Sheehan's Syndrome.[1]

Lomeo instituted this malpractice action on May 27, 1999, and the parties have completed discovery and exchanged expert reports. Lomeo contends that she lost more than 50 percent of her total blood volume during the Caesarean section procedure and immediate postpartum period. Lomeo's expert witnesses opine that Dr. Davis, Dr. Uroskie and CMC personnel grossly underestimated her blood loss and failed to timely recognize and treat her postpartum hemorrhagic shock and hypotension thereby causing her to develop Sheehan's Syndrome, a condition which the defendants neglected to diagnose prior to March 23, 1998. Lomeo has reportedly lost her

---

1. Sheehan's Syndrome is an ischemic necrosis of the pituitary that is often caused by postpartum hemorrhage and hypotension. It was first described by H.L. Sheehan in 1937 and its classic features include amenorrhea, hair loss and adrenal insufficiency. See Sheehan, H.L., *Postpartum Necrosis of the Anterior Pituitary*, J. Path. Baceriol 1937; 45:189-214; Vance, M.L., *Hypopituitarism*, N. Engl. J. Med. 1994; 330:1651-1662.

thyroid, hormone, adrenal and ovarian functions as a result of her Sheehan's Syndrome which has placed her at an increased risk of developing osteoporosis and potentially life-threatening infections and has further diminished her life expectancy.

On February 26, 2001, CMC filed a motion for summary judgment, and on March 12, 2001, Dr. Davis, Dr. Uroskie and Ob/Gyn presented a comparable motion. The movants argue that Lomeo's malpractice claims are barred by the two-year statute of limitations since this matter was filed more than two years after the date of the allegedly negligent conduct in July 1995. (See defendant CMC's motion for summary judgment, ¶¶10-13; defendant Davis/Uroskie/Ob/Gyn's motion for summary judgment, ¶¶9-13.) Lomeo submits that by operation of the "discovery rule," the limitations period was tolled until March 23, 1998, when she was first diagnosed with Sheehan's Syndrome from her severe postpartum blood loss and hemorrhagic shock. Following the completion of oral argument on July 19, 2001, this matter was submitted for a decision.[2]

## II. DISCUSSION

### (A) *Standard of Review*

Pennsylvania Rule of Civil Procedure 1035.2 furnishes two bases for the entry of summary judgment. First, un-

___

2. By notice dated March 30, 2001, the court administrator originally assigned the motions for summary judgment to Judge Carmen D. Minora and scheduled oral argument for June 14, 2001. After Judge Minora recused himself on that date, the court administrator forwarded a new notice to counsel on June 14, 2001, informing them that oral argument would be conducted before the undersigned on July 19, 2001.

der Pa.R.C.P 1035.2(1), summary judgment may be entered prior to the completion of discovery where there is no genuine issue of material fact which could be established by additional discovery or an expert report. *Manzetti v. Mercy Hospital,* 776 A.2d 938, 950-51 (Pa. 2001); *Ghaner v. Bindi,* 779 A.2d 585, 588 (Pa. Super. 2001). Alternatively, summary judgment may be entered pursuant to Pa.R.C.P 1035.2(2) following the completion of discovery if a party who bears the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which would warrant the submission of the issue to a jury. *Rieger v. Altoona Area School Dist.,* 768 A.2d 912, 914 (Pa. Commw. 2001); *Jones v. Bresset,* 47 D.&C.4th 60, 69 (Lacka. Cty. 2000). In both instances, "a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense." *Basile v. H&R Block Inc.,* 777 A.2d 95 (Pa. Super. 2001); *Brenzel v. Lehrer-McGovern,* 102 Lacka. Jur. 350, 352 (2001).

When considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party with all doubts as to the existence of a factual issue being resolved against the movant. *Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001). Although the moving party bears the burden of proving the nonexistence of any genuine issue of fact, *K.H. v. J.R.,* 2001 WL 614891, *2, ¶9 (Pa. Super. June 5, 2001), the non-moving party must adduce sufficient evidence regarding an essential issue on which [s]he bears the burden of proof in order to successfully withstand a summary judgment motion. *Keystone Aerial Surveys Inc.*

*v. Pennsylvania Property & Casualty Ins. Guaranty Ass'n,* 777 A.2d 84, 89 (Pa. Super. 2001); *Reaser v. Larkin,* 102 Lacka. Jur. 219, 222 (2000). However, in considering a motion for summary judgment, "it is not the court's function to decide facts, but to determine whether there are issues of fact to be tried." *Bellefonte Area School Dist. v. Deak,* 779 A.2d 1240, 1242 (Pa. Commw. 2001). Furthermore, summary judgment is appropriate only when there is no genuine issue as to any material fact and it is clear and free from doubt that the movant is entitled to judgment as a matter of law. *Pappas, supra; Yskamp v. PennDOT,* 102 Lacka. Jur. 196, 200 (2000).

### (B) *Discovery Rule*

In Pennsylvania, a cause of action for medical malpractice is governed by the two-year statute of limitations set forth in 42 Pa.C.S. §5524(2). *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992); *Haggart v. Cho,* 703 A.2d 522, 525 (Pa. Super. 1997), *appeal denied,* 553 Pa. 698, 718 A.2d 785 (1998). The defendant physicians and hospital assert that Lomeo's malpractice claim is time-barred since it was not filed within two years of the date on which she suffered her injury in July 1995. Lomeo counters that the two-year limitations period did not begin to run until March 23, 1998, when her injury, Sheehan's Syndrome, was first discovered such that this matter was timely commenced on May 27, 1999, approximately 14 months after that diagnosis was first made.

If the plaintiff's injury and its operative cause are not immediately discernible, the time within which an action

must be commenced may be extended by the "discovery rule" which is an equitable exception to the statutory limitations period. See *Crouse v. Cyclops Industry,* 560 Pa. 394, 404, 745 A.2d 606, 611 (2000); *Kramer v. Dunn,* 749 A.2d 984, 988 (Pa. Super. 2000). "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that [s]he has been injured and that his[/her] injury has been caused by another party's conduct." *Crouse, supra* (citing *Pearce v. Salvation Army,* 449 Pa. Super. 654, 657-59, 674 A.2d 1123, 1125 (1996)). Stated differently, "[t]he statute begins to run when the injured party 'possess[es] sufficient critical facts to put him[/her] on notice that a wrong has been committed and that [s]he need investigate to determine whether [s]he is entitled to redress.' " *Haggart,* 703 A.2d at 526 (quoting *A. McD. v. Rosen,* 423 Pa. Super. 304, 307-308, 621 A.2d 128, 130 (1993)). The party claiming the benefit of the discovery rule bears the burden of establishing that [s]he falls within that exception. *Cochran v. GAF Corp.,* 542 Pa. 210, 216, 666 A.2d 245, 249 (1995); *Pocono Int'l Raceway v. Pocono Produce,* 503 Pa. 80, 85, 468 A.2d 468, 471 (1983).

For the discovery rule to extend the statute of limitations period, the plaintiff must have been reasonably diligent in attempting to discover the harm and its operative cause. In defining that "reasonable diligence" standard, the Supreme Court of Pennsylvania has observed:

"Reasonable diligence is precisely that—a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. This court has long

held that there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. . . . Although reasonable diligence is an objective rather than a subjective standard, '[i]t is sufficiently flexible . . . to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.' . . . A plaintiff's actions must be evaluated, therefore, to determine whether [s]he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.' . . . In other words, a party is not under an absolute duty to discover the cause of his[/her] injury. Instead, [s]he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case." *Crouse, supra* at 404-405, 745 A.2d at 611-12. (citations omitted)

What constitutes a reasonable time for the plaintiff to discover an injury and its cause is usually an issue for the jury. *Cochran, supra* at 215, 666 A.2d at 248; *Hayward, supra* at 325, 608 A.2d at 1043. Indeed, the *Crouse* court cautioned that "[p]ursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that [s]he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.' " *Crouse, supra* at 404, 745 A.2d 611 (quoting *White v. Owens-Corning Fiberglas Corp.,* 447 Pa. Super. 5, 22, 668 A.2d 136, 144 (1995), *appeal denied,* 546 Pa. 648, 683 A.2d 885 (1996)). It is only "where the facts are so

clear that reasonable minds cannot differ [that] the commencement period may be determined as a matter of law." *Cochran, supra; Hayward, supra.*

The application of the discovery rule is best illustrated by the Supreme Court holding in *Hayward.*[3] In that case, the defendant physicians performed exploratory surgery to examine a mass that was present on the plaintiff's lung, and based upon their erroneous diagnosis that the mass was cancerous, proceeded to remove that portion of the lung affected by the suspected tumor. Postoperative pathological studies revealed that the mass was merely a blood clot and although the defendant surgeon advised the patient of that mistake on November 21, 1980, he further indicated that the surgery was nonetheless necessary to remove the mass. During the ensuing 2 1/2 years, the plaintiff experienced progressive shortness of breath which ultimately forced him to terminate his employment. On May 19, 1983, a subsequent treating physician informed the plaintiff "that the November 1980 surgery . . . was unnecessary and was a substantial factor in [his] disability." *Hayward, supra* at 322-23, 608 A.2d

---

3. In support of their motion for summary judgment, the defendants have cited *Murphy v. Saavedra,* 451 Pa. Super. 638, 679 A.2d 264 (1996) (memorandum opinion), *aff'd by an equally divided court,* 560 Pa. 423, 746 A.2d 92 (2000) (per curiam), in which an evenly divided panel of the Supreme Court affirmed the lower court's entry of summary judgment based upon the expiration of the statute of limitations under the discovery rule. However, a split decision by an evenly divided court has no precedential authority under principles of stare decisis. See *In re Griffin,* 456 Pa. Super. 440, 458, 690 A.2d 1192, 1201 (1997), *appeal denied,* 549 Pa. 701, 700 A.2d 441 (1997); *Chesler v. Government Employees Insurance Company,* 302 Pa. Super. 356, 359-60, 448 A.2d 1080, 1082 (1982). For that reason, we look to the holdings in *Crouse, Cochran* and *Hayward* for guidance.

at 1041-42. The plaintiff filed suit within two years of receiving that information, but the trial court granted summary judgment in favor of the health care providers by concluding as a matter of law that the plaintiff "knew shortly after the operation that his lung had been removed, that such removal had been the result of misdiagnosis, and that the operation had caused his medical problems." *Id.* at 324, 608 A.2d at 1042.

On appeal, the plaintiff argued "that, given the nature of the medical field and its complexity, he could not be expected to know, until informed otherwise by [his subsequent treating physician], that the ill effects he suffered were a result of wrongdoing and not merely the unexpected, inevitable or unforeseeable consequences of the medical treatment. . . ." *Id.* at 326, 608 A.2d at 1043. In reversing the lower court's entry of summary judgment, the *Hayward* court reasoned:

"A jury could very well find that [plaintiff] reasonably should have investigated the need for the surgery at the time that he was informed of the misdiagnosis, and thereby, have discovered the alleged malpractice. A jury, however, could just as well find that [plaintiff] acted reasonably in not investigating further and in being satisfied by [defendant's] assurances that the surgery was indeed necessary. Because reasonable minds could differ as to when [plaintiff's] injury was reasonably ascertainable, a jury question is presented, and therefore, summary judgment is not appropriate." *Id.* at 326-27, 608 A.2d at 1043.

The depositions and materials which have been submitted by the parties demonstrate that there are triable issues of fact as to whether Lomeo exercised reasonable

diligence in discovering her injury and its operative cause. Although Lomeo experienced weakness, hair loss and amenorrhea following her Caesarean section, her treating physicians led her to believe that she was suffering from possible "chronic fatigue" or "some type of hypothalamic dysfunction" rather than Sheehan's Syndrome. Lomeo was never advised by her health care providers that she had experienced excessive blood loss and hemorrhagic shock while unconscious during the surgical procedure and there is no indication in the record that she was informed that her postoperative symptomatology was anything other than the natural sequelae of her surgery. Hence, a jury could conclude that a reasonably diligent person would not have discovered Lomeo's injury and its operative cause until March 23, 1998, when the endocrinologist, Dr. Anega, first diagnosed her as suffering from Sheehan's Syndrome. In that event, this action would be deemed as timely filed on May 27, 1999, less than two years after the initial diagnosis of Sheehan's Syndrome.

If the discovery rule were to be applied as rigidly as the defendant health care providers have advocated, Lomeo would be required to discover, as a matter of law, that which her physicians had failed to diagnose, namely, that hemorrhagic shock related to the Caesarean section procedure caused her to develop Sheehan's Syndrome. Such an incongruous construction of the discovery rule would create a double standard in this case by obligating a patient to self-diagnose an injury (*i.e.,* Sheehan's Syndrome caused by hemorrhagic shock), which condition the defendants maintain they were *not* negligent for failing to recognize earlier. The defendants' proffered interpretation of this rule could also produce disturbing con-

sequences for health care providers. If, as the defendants have argued, patients are required to institute suit before a physician even diagnoses an injury, let alone its operative cause, plaintiffs will be compelled to file premature or perhaps even frivolous malpractice suits so as to preserve the statute of limitations, thereby forcing physicians, hospitals, insurers and courts to endure non-meritorious claims. See Thomas, *An Insurer's Right to Settle Versus its Duty to Defend Non-Meritorious Malpractice Claims,* 16 J. Leg. Med. 545 (Dec. 1995). Thus, applying an equitable principle in such an inequitable manner would be detrimental to the physician and patient alike. Accordingly, since the court should not withhold a discovery rule determination from the jury "unless the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law," *Haggart,* 703 A.2d at 528, the motions of Dr. Davis, Dr. Uroskie, Ob/Gyn and CMC for summary judgment will be denied.[4]

## ORDER

And now, July 24, 2001, upon consideration of the motions for summary judgment of defendants, Harold

---

4. Lomeo alternatively argues that inasmuch as she continued treating with Dr. Davis from July 1995 through January 1998, the statute of limitations was tolled until January 1998 when she ceased her postoperative care with Dr. Davis. Lomeo's argument is without merit as our Superior Court has previously held: "Pennsylvania has not adopted a per se 'continuous treatment rule' tolling the statute of limitations in a malpractice case until the end of treatment by the defendant. . . . Rather, the courts of this Commonwealth simply apply the discovery rule to determine the date when a patient could reasonably be expected to know of his[/her] injury." *Haggart,* 703 A.2d at 526-27. (citation omitted)

Davis M.D., Theodore Uroskie M.D., Ob/Gyn Consultants, and Community Medical Center, the memoranda of law submitted by the parties, and the oral argument of counsel on July 19, 2001, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the defendants' motions for summary judgment are denied.