Carl J. KRAMER and Patricia C. Kramer, H/W, Appellants,

v.

Jack DUNN t/a Remax Action Associates, Janet Finn, Weichert Realtors, Jack Hoopes t/a, Hoopes Better Homes and Gardens, B. Gary Scott Realtors, Prudential Preferred Properties, Robert M. Cuevas and Mary M. Cuevas, H/W., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 6, 1999.

Filed April 3, 2000.

Andrew S. Wade, West Chester, for appellants.

John R. Gringas, Broomall, for appellants.

William D. Longo, Philadelphia, for Dunn, appellee.

John J. Cunningham, IV, West Chester, for Prudential, appellee.

Marion H. Griffin, Philadelphia, for Finn, appellee.

Before DEL SOLE, HUDOCK and BECK, JJ.

DEL SOLE, J.:

¶ 1 This appeal is from an Order filed August 14, 1998, sustaining Appellees, Weichert Realtors, Robert M. Cuevas and Mary M. Cuevas' preliminary objections to Appellants, Carl Kramer and his wife, Patricia Kramer's amended complaint and from an Order dated April 5, 1999, granting summary judgment in favor of Appellees, Jack Dunn, t/a Remax Associates and Janet Finn.

¶ 2 Appellants claim the trial court erred in granting summary judgment after the case was called for trial, that the trial

court erred or abused its discretion in determining when the applicable statute of limitations began to run and that the trial court erred in granting defendants Weichart Realtors and Robert and Mary Cuevas' preliminary objections. We affirm in part, reverse in part, and remand for trial.

¶ 3 The factual scenario underlying this appeal was summarized by the trial court as follows:

In 1982 defendants Robert and Mary Cuevas enlisted the aide [sic] of defendant Jack Dunn, a realtor, to help them find a home. At the time Jack Dunn worked for the real estate firm Andrews, Dickinson, and Pinkstone. Mr. Dunn showed the Cuevas the subject property at 123 Union Road, West Brandywine Township, Coatsville, Chester County, Pennsylvania[1]. The property was listed by Andrews, Dickinson, and Pinkstone.[2] On June 15, 1982 the Cuevas purchased the property. Early in 1985 the Cuevas contracted Re/Max and Associates (Dunn's new employer), to list and sell the subject property for them. The property was advertised in local newspapers and in the Multi List Service. On April 28, 1985 Jack Dunn and Janet Finn showed the subject property to Carl and Patricia Kramer.[3] On July 22, 1985 the Kramers purchased the property. The Kramers visually inspected the subject property but did not obtain a survey of the property or attempt to locate the property lines based on the metes and bounds description, prior to purchasing it.

On January 13, 1993 the Kramers' dog bit Mary Drew White, the adjacent property owner Mrs. White informed the Kramers of the dog bite and told the Kramers that the Kramers' home, pool, pool house, and flagpole were located on the White property. On February 10, 1993 Plaintiffs were informed that a survey would be conducted of the White and Kramer properties. On March 15, 1993 the results of the survey confirmed that most of the Kramers' home, pool,

pool house, and flagpole were indeed located on the White property. On February 7, 1995 the Kramers filed a Writ of Summons against the Realtors, Cuevas' and other defendants in the present action. On February 21, 1996 Mrs. White filed an action in ejectment against the Kramers, demanding removal of the house, swimming pool, pool house, and other improvements from the White property. On June 23, 1997 the Kramers filed a Complaint against the Realtors, Cuevas' and other defendants in the present action. On August 27, 1998 the action in Ejectment brought by Mrs. White against the Kramers was settled during the trial.[4]

The instant case was scheduled for trial on February 1, 1999. On February 1, 1999, immediately prior to trial, we granted Defendant's motion for Summary Judgment. The Order was reduced to writing on April 5, 1999 at Plaintiff's request.[5] This appeal followed.

1. Mr. Dunn discovered the property through the use of the Real Estate Broker's Multi List Service. This service contains in part information regarding lot size, tax parcel number, home dimensions, room sizes, and unique property features (i.e. pool, out buildings, fencing). The Multi List Service listed the property as containing a lot size of 145 feet × 263.5 feet, a pool, three-stall barn, and oversized garage.

2. Jack Dunn was not the listing agent for this property and was not involved in the marketing of this property at this time.

3. Defendant Janet Finn is a licensed realtor.

4. According to the stipulation, Plaintiffs purchased the additional acreage from Mrs. White which included the ground under the house and pool. Plaintiffs paid $20,000 for the land, $1,200 for the survey costs, and removed from the White property a shed, dog pen, gazebo and footbridge. Plaintiffs incurred attorneys' fees in the amount of $20,500 in defense of the ejection action.

5. Pa.R.A.P. 301. This order was effective as of February 1, 1999, the date it was stated on the record in open court before the parties.

¶ 4 Appellants claim the trial court abused its discretion by considering

Dunn's motion for summary judgment on the day of trial.[1] Appellants assert that by considering the motion, commencement of the trial was delayed. In support of this argument, Appellants cite to Pa.R.C.P. 1035 which provides that a party may move for summary judgment "[a]fter the **pleadings are closed, but within such time as not to delay trial.**" [emphasis added].

¶ 5 In the present case, the trial court initially stated that because Dunn's motion was presented on the day of trial, it would not consider it. However, the court then allowed counsels' arguments concerning the motion and after hearing testimony from Appellant husband, granted Dunn's motion for summary judgment.

¶ 6 Typically, Rule 1035 has been interpreted to not allow a court to entertain a motion for summary judgment on the day of trial. *Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681 (1995) (holding that trial court abused its discretion in granting summary judgment where defendants moved for summary judgment on the morning of trial and after a jury had been empanelled thus depriving plaintiffs of adequate notice and a reasonable opportunity to respond). However, in *Myszkowski v. Penn Stroud Hotel*, 430 Pa.Super. 315, 634 A.2d 622 (1993), this court held that a trial court did not abuse its discretion in awarding summary judgment to a defendant where the defendant filed the motion on the day of trial and the trial court had benefit of an extensive record and the parties were afforded an opportunity to argue their positions at a pretrial conference.

¶ 7 In the instant case, while the court entertained the motion on the day trial was scheduled to begin, the record shows Dunn's motion was filed almost a month before that date and Appellants' answer and brief in response to the motion were sent to Dunn prior to the scheduled date of trial. Furthermore, a jury had not been selected and the trial court heard extensive oral argument from both parties before granting the motion. Accordingly, we hold the facts presented in this case are analogous to those found in *Myszkowski* and, accordingly, reject Appellants' claim that the trial court abused its discretion in entertaining the motion.

¶ 8 Appellants assert that, even if the timing of the motion for summary judgment was proper, the trial court invaded the province of the jury by deciding when the statute of limitations began to run. We agree. In their Amended Complaint, Appellants alleged they were entitled to damages stemming from Dunn and Finn's intentional and negligent misrepresentations. The trial court determined the applicable statute of limitations for these claims was 2 years and concluded Appellants received actual notice of their injury on January 13, 1993, when Appellants' neighbor, White, told them their house was built on her property. Therefore, the trial court held Appellants' filing of a writ of summons on February 7, 1995, was untimely. The determination of when the statutory period began to run, however, was a question of fact for the jury and we hold that by determining that critical fact, the trial court improperly usurped the jury's province.

¶ 9 Our courts have determined that a "statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Cappelli v. York Operating Company, Inc.*, 711 A.2d 481, 484 (Pa.Super.1998) citing *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040, 1042 (1992). (additional citations omitted). "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to

---

1. Appellants also argue the trial court erred in granting summary judgment and in dismissing the complaint against Finn where she did not file a motion for summary judgment. In light of our disposition, we need not reach this claim.

institute suit within the prescribed period." *Id.*

¶ 10 In the instant case, Appellants maintain they did not know of their potential claim until White's attorney informed them on February 10, 1993, that a survey of the subject property was going to be conducted. Therefore, they argue the well-recognized "discovery rule" applies and, under that rule, institution of their suit on February 7, 1995, fell within the applicable two-year period. The trial court rejected this argument and made the factual determination that Appellants were put on actual notice of their right to institute suit when White informed them that their house was built on her property.

¶ 11 In the very recent case of *Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606, 611 (2000), our supreme court discussed application of the discovery rule and the respective roles of trial judge and jury in determining when an applicable statute of limitations begins to run.

Whether a complaint is timely filed within the limitations period is a matter of law for the court to determine. *Hayward* [*v. Medical Center of Beaver County*, 530 Pa. 320, 608 A.2d 1040, 1042 (1992)]. However, in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured. In such cases the statute of limitations does not begin to run at the instant the right to institute suit attaches, rather the discovery rule applies. The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct. *Pearce v. Salvation Army*, 449 Pa.Super. 654, 674 A.2d 1123, 1125 (Pa.Super.1996). Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has

suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.' *White v. Owens–Corning Fiberglas Corp.*, 447 Pa.Super. 5, 22, 668 A.2d 136, 144 (1995) (quoting *Petri v. Smith*, 307 Pa.Super. 261, 271–72, 453 A.2d 342, 347 (1982)), *appeal denied*, *White v. Owens–Corning*, 546 Pa. 648, 683 A.2d 885 (1996). Thus, once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law. *Hayward*, 530 Pa. at 325, 608 A.2d at 1043.

*Id.* at 611.

¶ 12 Appellants claim the discovery rule applies to them because they were not aware of the potential injury to their property rights until they were notified by White's attorney that White was going to have a survey conducted. Our courts have held that it is a plaintiff's duty to establish that reasonable diligence was exercised in discovering his or her injury. *Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606, 611 (2000), and *Cappelli v. York Operating Company, Inc.*, 711 A.2d 481, 484 (Pa.Super.1998). Reasonable diligence is an objective standard and is defined as "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Cappelli* at 485. In the instant case, Appellant husband testified that when White initially told him about his house being on her property, he thought that "she was out of her mind." N.T. 2/1/99 at 47. The fact that Appellants had lived on the property for eight years before White said anything of this nature to them, coupled with the fact that the remark was made right after Appellants' dog bit White, raises a legitimate question of when it was reasonable for Appellants to realize that White's claim was serious. Accordingly, we hold the trial court erred in determining this crucial factual matter which should have been left for the jury to decide.

¶ 13 Appellants also claim the trial court erred or abused its discretion in entering summary judgment regarding their allegations of violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"). The trial court found the advertisements complained of by Appellants did not violate the UTPCPL and that the filing of Appellants' suit in 1995 fell outside of the applicable six-year statute of limitations for this claim. The court wrote: "[I]f the encroachment was so obvious that the Realtor should have discovered it in 1985 then it is reasonable to believe that the Kramers should have also discovered the problem in 1985, or shortly thereafter, and brought suit by 1991, within the six-year statute of limitations." Opinion at 7.

¶ 14 First, Appellants argue the trial court ignored the fact that Appellants' claims concerning violation of the UTPCPL fell under a six-year statute of limitations as announced in *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987). This claim is belied by the record. The trial court cited to *Gabriel* and noted the six-year limitations period established therein. Accordingly this claim fails.

¶ 15 The trial court wrote that it dismissed Appellants' UTPCPL claims based upon the running of the statute of limitations and Appellants' failure to show Appellants read the Multi List ad or that the newspaper ads misrepresented the number of acres being sold. At the close of counsels' arguments on the motion for summary judgment the court stated as follows:

And I'm granting the motion specifically with regard to not only the statute of limitations, but I'm also primarily granting it on the merits with regard to the motion for summary judgment on the remaining count. The allegation here by the plaintiff is that at best he may have read the multi List documents, but he's note [sic] sure. The Multi List document, which is Exhibit D, contains a disclaimer at the bottom of it, and your statement on the record that that's real-

ly not the basis of his claim because the basis of his claim were the newspaper ads, and in none of the newspaper ads was there an indication as to the number of acres being sold, and furthermore, we found that the statute of limitations kicked out everything else.

N.T. at 115–116.

¶ 16 On an appeal from a grant of summary judgment, a reviewing court must examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party benefit of all reasonable inferences which can be drawn from those facts. *Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397 (1995). The Superior Court will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995).

¶ 17 Appellants' UTPCPL claim can be characterized as one for misrepresentation. Appellants averred the Cuevases and Dunn through both personal representations and through the Multi List and newspaper ads intentionally deceived Appellants. The record supports the trial court's holding that Appellants were unable to definitively state that they ever saw the Multi List ad and, therefore, we hold that claim is meritless. However, as we have already stated herein, the discovery rule may apply to Appellants' claims of misrepresentation and, therefore, the question of when the UTPCPL's six-year statute of limitations begins to run, should be posed to a jury. Furthermore, the trial court incorrectly held Appellants failed to establish a claim under the UTPCPL concerning the newspaper advertisements in question because the ads did not indicate how many acres were being sold. Appellants averred that Dunn and the Cuevases "intentionally deceived Appellants as to the contents of the parcel." A review of the copies of the ads attached to Appellants' Amended Complaint shows the ads stated the property included a "lovely in-

ground pool, 2 stall barn, and 3 BR, 2 car garage Bi-level." As the trial court acknowledged in its Opinion, White's survey confirmed that these items were, in fact, part of White's property. Accordingly, the trial court improperly dismissed Appellants' UTPCPL claim based upon the statute of limitations and the fact that the newspaper ads did not state the lot size.

¶ 18 Finally, Appellant argues the trial court erred in granting Appellees' Weichart Realtors, Inc. and Robert and Mary Cuevas' preliminary objections.

> Our review of a trial court's sustaining of preliminary objections in the nature of a demurrer is plenary. *Huddleston v. Infertility Center,* 700 A.2d 453 (Pa.Super.1997). Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. *Shulick v. Paine-Webber, Inc.,* 700 A.2d 534 (Pa.Super.1997). We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion. *Bocchicchio v. General Public Utilities Corp.,* 456 Pa.Super. 23, 689 A.2d 305 (Pa.Super.1997).

*Sunbeam Corp. v. Liberty Mut. Ins. Co.,* 740 A.2d 1179, 1183 (Pa.Super.1999).

■ ¶ 19 Appellants argue Weichart Realty, as successor to the listing real estate agency for whom Appellee Dunn worked in 1982 when Appellee Cuevases purchased the subject property, is liable to Appellants for providing a false description of the property in a 1982 Multi-list advertisement. We find no merit this claim. Appellants pleaded in their Amended Complaint that Weichart was vicariously liable to them as a result of Dunn's participation in the 1982 sale to the Cuevases, however, Appellants were not parties to the 1982 transaction. Accordingly, we hold the trial court properly granted Weichart's preliminary objections.

¶ 20 Finally, Appellants assert the trial court should not have granted preliminary objections in favor of the Cuevases because Appellants' "amended complaint well stated the factual allegations against these defendants" and that "[c]auses of action were adequately pled against the defendants." Appellants' Brief at 14. First, we note that we do not have benefit of a trial court opinion specifically discussing the basis for the trial court's grant of the Cuevases' preliminary objections. The trial court generally states in its Opinion that "[t]here was no evidence that the Cuevas [sic] or the Realtors had any actual knowledge of the encroachment on the White property" and "[N]o evidence existed that the Cuevas [sic] had any knowledge of the encroachment." Opinion at 4 and 7.

■ ¶ 21 After thoroughly reviewing Appellants' Amended Complaint, we hold Appellants pled a legally cognizable cause of action for intentional misrepresentation against the Cuevases. Intentional misrepresentation has been defined as: "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance". *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 560 (1999). Appellants averred the "Defendants," which term includes the Cuevases, misrepresented what was conveyed and that "defendants' intentional acts and representations have caused the Plaintiffs to act upon such representations, to the substantial detriment of Plaintiffs, and continue to cause detriment to the Plaintiffs." Pennsylvania Rule of Civil Procedure 1019(b) states that "[m]alice, intent, knowledge, and other conditions of mind may be averred generally." Accordingly, assuming Appellants' averments of fact are true, we hold Appellants adequately pled a legally cognizable cause of action for intentional misrepresentation.

¶ 22 The trial court also held Appellants failed to adequately plead a cause of action for negligent misrepresentation against the Cuevases. Negligent misrepresentation has been defined as follows:

Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.

*Id.* at 561 (citations omitted).

¶ 23 Appellants' Amended Complaint avers that Dunn acting as the Cuevases' agent, should have known that the metes and bounds description of the property did not include the structures which were represented as being part of the conveyance and that Appellants' reliance on the information provided by Dunn and the Cuevases caused Appellants to sustain damages. Accordingly, we hold Appellants raised a legally cognizable cause of action for negligent misrepresentation and therefore, the trial court should not have granted the Cuevases' preliminary objections regarding this claim.

¶ 24 Appellants also argue the trial court should not have granted the Cuevases' preliminary objections with respect to Appellants' breach of express warranty claim. We agree.

¶ 25 In their memorandum in support of their preliminary objections, the Cuevases argued the deed did not contain an "express warranty that any particular items are contained on the property" and, there-fore, they could not be held liable. Since we do not have benefit of a trial court opinion discussing this claim, we can only surmise the trial court accepted the Cuevases' argument.

¶ 26 The deed delivered to Appellants by the Cuevases was a deed of general warranty which conveyed to Appellants "[a]ll that certain tract or piece of ground, with the buildings and improvements thereon erected" and further represented that the Cuevases, as grantors, warranted the conveyance.

¶ 27 It is well settled that "[a] vendor by general warranty ... covenants to defend the grantee's title against all mankind, the whole world." *Zurich General Accident and Liability Insurance Company v. Klein*, 181 Pa.Super. 48, 121 A.2d 893, 895 (1956). Where property has been conveyed by a deed of general warranty, actual or constructive eviction, as the result of a defect of title, must be shown in order to recover on a breach of the warranty. *Herbert v. Northern Trust*, 269 Pa. 306, 112 A. 471, 472 (1921).

¶ 28 In its statement of facts, the trial court acknowledges the survey conducted by White "confirmed that most of the Kramers' [Appellants'] home, pool, pool house and flagpole were indeed located on the White property." Opinion at 2. Furthermore, the court noted that as a result of the settlement entered into by Appellants and White, Appellants paid White a total of $21,200, removed a shed, dog pen, gazebo and footbridge from White's property and incurred substantial attorney's fees.

¶ 29 Based upon these facts recited by the trial court, in order to enjoy the premises they purchased from the Cuevases, Appellants were required to pay White for property they believed was originally conveyed to them in their general warranty deed. Accordingly, Appellants were constructively evicted from the property.

¶ 30 We conclude that, where there is a sale of real estate and the seller conveys the property with the structures and buildings contained thereon, the deed is a representation that the buildings are a part of the sale and are a part of the property described in the deed. In a vast number of real estate transactions, the parties are buying and selling a structure (house). While the lot is important, it is inherent in the transaction that the structure is on the realty conveyed. The Cuevases' deed warranted that they had title to the property and structures erected thereon. However, it was later determined the Cuevases did not have title to all of the land underlying the structures contemplated to be included in the conveyance and, as a result, Appellants were constructively evicted from the property. Accordingly, we hold Appellants pled a legally cognizable cause of action for a breach of express warranty and as such, the trial court improperly granted the Cuevases' preliminary objections relating to this claim.

¶ 31 The Order granting Weichart Realty's preliminary objections is affirmed.

¶ 32 The Order granting the Cuevases' preliminary objections is reversed and the matter is remanded for trial.

¶ 33 The Order granting summary judgment in favor of Dunn and Finn is vacated and the matter is remanded for trial.

¶ 34 Affirmed in part. Vacated in part. Remanded for further proceedings.

¶ 35 Jurisdiction relinquished.

¶ 36 Judge BECK concurs in the result.