**HERITAGE SURVEYORS
& ENGINEERS, INC.,
Appellant,**

v.

**NATIONAL PENN BANK, Appellee.**

Superior Court of Pennsylvania.

Argued April 2, 2002.

Filed June 19, 2002.

Before McEWEN, P.J.E., STEVENS, J., and OLSZEWSKI, J.

STEVENS, J.

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Bucks County granting Appellee National Penn Bank's motion for judgment on the pleadings and dismissing Appellant Heritage Surveyors and Engineers, Inc.'s (Her-

itage) complaint. Heritage avers that the trial court erred in concluding that Heritage did not state a cause of action for intentional misrepresentation, fraudulent inducement, negligent misrepresentation, and breach of an implied covenant of good faith and fair dealing. In addition, Heritage avers that the trial court erred in concluding that, after a third party defaulted on a loan, National Penn Bank had a continuing duty of confidentiality to the third party. We affirm.

¶ 2 The pleadings in this case indicate the following: Beginning in February of 1996, Heritage maintained bank accounts and borrowed money from National Penn Bank. In 1999 and 2000, Heritage provided engineering and surveying services for Ventresca Properties, L.P. (Ventresca), which is a development and construction company. At some point, Ventresca became slow in paying Heritage's invoices, and, therefore, Heritage met with its personal banker, Earl Clevenstine, at National Penn Bank, for the purpose of acquiring a line of credit.

¶ 3 On March 22, 2000, National Penn Bank granted Heritage a line of credit in the amount of $50,000.00, and National Penn Bank obtained as security all of Heritage's receivables, other corporate property, and a mortgage on Heritage's president's personal residence. Heritage informed National Penn Bank that it was expecting payment from Ventresca and that it was acquiring the line of credit in order to continue operations on the Ventresca job. As of March 22, 2000, Ventresca owed Heritage $41,625.29 for services rendered by Heritage. Heritage continued to work on the Ventresca job and to date is owed $80,175.58.

¶ 4 On June 15, 2000, Heritage became aware of Ventresca's insolvency and filed various mechanics' liens; however, National Penn Bank initiated mortgage foreclo-

sure against Ventresca, making it highly unlikely that Heritage's mechanics' liens would be paid. Heritage subsequently became aware that, at the time Heritage established the line of credit, National Penn Bank was aware of Ventresca's financial problems. However, such problems were not communicated to Heritage. On August 25, 2000, National Penn Bank notified Heritage that it was demanding repayment of $46,000.00, which Heritage had borrowed, plus interest.

¶ 5 On September 12, 2000, Heritage filed a complaint alleging breach of an implied covenant to act in good faith and fair dealing, fraudulent misrepresentation, and negligent misrepresentation. On October 23, 2000, National Penn Bank filed preliminary objections alleging that Heritage's complaint was legally deficient since National Penn Bank had no duty to inform Heritage concerning Ventresca's financial status and no implied duty of good faith and fair dealing was applicable.[1] On January 9, 2001, Heritage filed an amended complaint, in which it alleged (1) breach of an implied covenant to act in good faith and fair dealing, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) fraudulent inducement, and (5) breach of the Fair Trade and Business Practices Act. On March 12, 2001, National Penn Bank filed an answer with new matter, and, following Heritage's reply to the new matter, National Penn Bank filed a motion for judgment on the pleadings on August 20, 2001. In its motion, National Penn Bank alleged that there existed no duty of good faith, no fraudulence, no negligence, no fraudulent inducement, and no violation of the Fair Trade and Business Practices Act.

¶ 6 On November 1, 2001, the trial court granted National Penn Bank's motion for judgment on the pleadings and dismissed Heritage's complaint with prejudice. This timely appeal followed. On November 9, 2001, the trial court ordered Heritage to file a Pa.R.A.P.1925(b) statement, Heritage filed a statement, and the trial court filed an opinion.

Our standard of review of a grant or denial of a motion for judgment on the pleadings is as follows:

> We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Weik v. Estate of Brown,* 794 A.2d 907, 908–909 (Pa.Super.2002) (citations omitted).

¶ 7 Heritage's first issue is that the trial court erred in concluding that no reasonable minds could differ that Heritage failed to establish a claim for intentional misrepresentation. We disagree.

¶ 8 The elements of intentional misrepresentation are as follows:

(1) A representation

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

---

1. The trial court granted National Penn Bank's preliminary objections, but subsequently vacated the order so that Heritage could file a memorandum in response to the preliminary objections. No further action was taken with regard to the preliminary objections; however, Heritage filed an amended complaint.

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999) (citation and quotation omitted). "[F]raud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture." *Moser v. DeSetta,* 527 Pa. 157, 160, 589 A.2d 679, 682 (1991).

▆ ¶ 9 Here, Heritage contends that National Penn Bank was liable for intentional misrepresentation when National Penn Bank, in response to a direct inquiry by Heritage, indicated that it would not comment regarding Ventresca's financial status. We conclude that National Penn Bank's statement was not calculated to deceive, did not suppress the truth, and *did not suggest anything false.* In fact, National Penn Bank's statement was a neutral response to a direct question regarding another borrower's financial status. National Penn Bank's statement of "no comment" properly inferred that National Penn Bank owed a duty to Ventresca to not disclose confidential account information[2] and indicated that Heritage should investigate Ventresca's financial status itself. We note that Heritage has not alleged in its brief that National Penn Bank's gestures or looks by its agent created intentional misrepresentation. *Moser, supra.* As such, we affirm on this basis.

¶ 10 Heritage's second issue is that the trial court erred in concluding that no reasonable minds could differ that Heritage failed to establish a claim for fraudulent inducement. The trial court concluded that, because the promissory note is a fully integrated agreement, containing an integration clause, Heritage's claim of fraudulent inducement is not actionable. The trial court relied on *HCB Contractors v. Liberty Place Hotel Associates,* 539 Pa. 395, 652 A.2d 1278 (1995), in support of its argument. We agree with the trial court that Heritage is unable to maintain a cause of action for fraudulent inducement.

¶ 11 In *HCB Contractors,* 539 Pa. at 398, 652 A.2d at 1279, the Supreme Court held that:

[W]here prior fraudulent oral representations are alleged regarding a subject that was specifically dealt with in the written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract.

\* \* \*

Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, . . . the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

There is not the slightest doubt that if [Heritage] had merely averred the falsity of the alleged oral representations, parol evidence thereof would have been inadmissible. Does the fact that [Heritage] further averred that these oral representations were *fraud-*

---

**2.** This conclusion is discussed in depth *infra.*

*ulently* made without averring that they were *fraudulently* or by accident or mistaken *omitted* from the subsequent complete written contract suffice to make the testimony admissible? The answer to this question is 'no'; if it were otherwise the parol evidence rule would become a mockery, because all a party would have to do to avoid, modify, or nullify it would be to aver (and prove) that the false representations were *fraudulently* made.

(citations, quotations, and quotation marks omitted) (emphasis in original).

¶ 12 In the case *sub judice,* the promissory note at issue contained an integration clause, which stated the following:

6. *Integration.* The terms and conditions of this Note together with the terms and conditions of the Loan Agreement and the Related Documentation, which are incorporated herein by reference as if set forth in full, contain the entire understanding of the Borrowers and the Bank with respect to the indebtedness evidence[d] hereby.

The trial court concluded, and we agree, the integration clause prevented the admission of parol evidence in order to refute express terms of the contract. That is, since Heritage merely averred that the alleged oral misrepresentations were fraudulent, without averring that the misrepresentations were fraudulently or by accident or mistake omitted from the promissory note, Heritage could not maintain a cause of action for fraudulent inducement. We agree and affirm on this basis.[3]

¶ 13 Heritage's third claim is that the trial court erred in concluding that no reasonable minds could differ that Heritage failed to state a cause of action for negligent misrepresentation. Specifically, Heritage claims that National Penn Bank's statement that it would not comment on Ventresca's financial status was negligent misrepresentation. Negligent misrepresentation has been defined as follows:

Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.

*Kramer v. Dunn,* 749 A.2d 984, 991 (Pa.Super.2000) (citations and quotation omitted). We conclude that National Penn Bank had no duty to disclose another borrower's (Ventresca) financial status to Heritage, and, in fact, National Penn Bank owed a duty to Ventresca to keep its financial information confidential.

¶ 14 In *McGuire v. Shubert,* 722 A.2d 1087 (Pa.Super.1998), this Court addressed the issue of whether a bank owes a customer a duty of confidentiality. Therein, this Court stated the following:

Although the appellate courts in Pennsylvania have not previously addressed

---

**3.** To the extent Heritage is contending that it was fraudulently induced into continuing services with Ventresca due to National Penn Bank's words and/or actions, we find the issue to be waived. Heritage has failed to develop this claim or cite any authority supporting the position. Pa.R.A.P. 2119.

the issue of whether a bank is under a duty of confidentiality to its customer, it is established in Pennsylvania that the legal relationship between a financial institution and its depositors is based on contract. We find that the duty on a bank and its employees to keep a customer's bank account information confidential, which has long been recognized [by other] jurisdictions, is present as an implied contractual duty under Pennsylvania common law, as well.

*McGuire*, 722 A.2d at 1090 (citation omitted). This Court further held that, where a bank discloses a customer's financial information to a third party, the customer may have a cause action for invasion of privacy. *Id.* at 1092.

¶ 15 Here, National Penn Bank had no duty to inform Heritage about Ventresca's financial status. Rather, National Penn Bank had an affirmative duty to Ventresca to keep Ventresca's financial information confidential. Since National Penn Bank did not owe a duty to Heritage, we affirm on this basis.

¶ 16 Heritage's fourth contention is that, after Ventresca defaulted on its loan, National Penn Bank had no continuing duty of confidentiality to Ventresca. To support its contention, Heritage cites *McGuire, supra.* We have thoroughly reviewed *McGuire, supra* and find no such limitation on confidentiality. Since Heritage has cited no other authority supporting his position, we decline to review the issue further. *See* Pa.R.A.P. 2119.

■ ¶ 17 Heritage's final claim is that the trial court erred in concluding that no reasonable minds could differ that Heritage failed to state a cause of action for breach of an implied covenant of good faith and fair dealing.

■ ¶ 18 "The duty of good faith has been defined as [h]onesty in fact in the conduct or transaction concerned. Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts." *Creeger Brick and Building Supply, Inc. v. Mid–State Bank and Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 153 (1989) (citations, quotations, and quotation marks omitted). In Pennsylvania, the duty of good faith has been recognized in limited situations. However, this Court has held that a lending institution does not violate a separate duty of good faith by adhering to its agreements with a borrower or enforcing its contractual rights as a creditor. *See Corestates Bank, N.A. v. Cutillo,* 723 A.2d 1053 (Pa.Super.1999); *Creeger Brick and Building Supply, Inc., supra.*

> The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it negotiated terms of a loan which are favorable to itself.

*Creeger Brick and Building Supply, Inc.,* 560 A.2d at 154.

¶ 19 Based on the aforementioned, to the extent Heritage argues that National Penn Bank violated a duty of good faith and fair dealing with regard to the enforcement of the promissory note at issue, we find that such a duty did not exist.[4] In addition, to

---

4. In *Corestates Bank, N.A.,* this Court created an exception to the rule established in *Creeger Brick and Building Supply, Inc.* Specifically, in *Corestates Bank, N.A.,* this Court recognized that a lending institution does not violate a separate duty of good faith by adhering to its agreements with a borrower or enforcing its contractual rights as a creditor. However, because the parties had a longstanding relationship, the *Corestates Bank, N.A.* panel determined that, as a matter of law, the lending institution owed the borrower a duty of good faith. We conclude that such a longstanding relationship is not present in this

the extent Heritage argues that National Penn Bank violated a duty of good faith and fair dealing with regard to National Penn Bank's refusal to comment about Ventresca's financial status, we find that, pursuant to our discussion *supra,* no duty to disclose Ventresca's status existed. As such, we affirm on this basis.

¶ 20 For all of the foregoing reasons, we affirm.

¶ 21 Affirmed.

case, and, therefore, the exception created in *Corestates Bank, N.A.* is inapplicable. In *Corestates Bank, N.A.,* the relationship existed for nineteen years, involving at least six personal and business loans. Here, prior to securing the line of credit at issue, Heritage maintained a single bank account and a dormant line of credit with National Penn Bank.