J-A25011-15
J-A25012-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| MILLER BOYS PROPERTIES, LLC, | :: | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CONESTOGA BANK, | : | |
| | : | |
| Appellee | : | No. 800 EDA 2015 |

Appeal from the Order February 9, 2015,
Court of Common Pleas, Philadelphia County,
Civil Division at No. April Term, 2013 No. 04218

---

| MILLER BOYS PROPERTIES, LLC, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ADVANCED MERCHANT GROUP, INC. | : | |
| and CONESTOGA BANK, | : | |
| | : | |
| Appellee | : | No. 824 EDA 2015 |

Appeal from the Order entered February 6, 2015,
Court of Common Pleas, Philadelphia County,
Civil Division at No. April Term, 2013 No. 04858

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED SEPTEMBER 28, 2015**

Appellant, Miller Boys Properties, LLC (the "Miller Boys"), appeals from the trial court's entry of summary judgment in the two above-captioned actions.  For the reasons that follow, we affirm the trial court's rulings.

---

*Former Justice specially assigned to the Superior Court.

In its written opinion in support of its grant of summary judgment, the

trial court provided the following summary of the factual background

underlying these actions:

> [Miller Boys] filed the case captioned above, along with two other cases against [Appellee Conestoga Bank ("Conestoga")] as well as [Advanced Merchant Group, Inc. ("AMG")] and Onexcellence, Inc. (case Nos. 130404858 and 130404863, respectively). In the present case, the Miller Boys claim that Conestoga misapplied and/or failed to pay to them certain rents allegedly received by Conestoga pursuant to an assignment of rents agreement after the Miller Boys defaulted under loans extended to them by Conestoga. Further, the Miller Boys seek declaratory judgment and allege fraudulent inducement, breach of contract, intentional interference with contractual relations, promissory estoppels, unjust enrichment, conversion, breach of fiduciary duty based on property damages, and a violation of the Equal Credit Opportunity Act ("ECOA"). The Miller Boys is an LLC that was created for the purpose of purchasing and owning real estate investments. Jack Miller and Ari Miller, two members of the Miller Boys, have extensive experience in the financial sector. Jack Miller previously worked as a mortgage loan officer at Federal Savings Bank, and subsequently became the president of Gelt Financial Corporation, in addition to working as the chief executive officer of Public Savings Bank. Ari Miller is a licensed real estate agent.

> In 2006, the Miller Boys applied for several loans with Conestoga in order to finance the purchase of a property at 600 Louis Drive, Warminster, Pennsylvania (the "property"). On February 26, 2006, the Miller Boys signed a commitment letter that set out the terms of one of the loans. The Miller Boys understood that one of the conditions of

Conestoga extending the loan was the right of Conestoga to collect certain rents, and the fully integrated agreement held that any oral or written representations not expressly set forth in the letter were superseded by the terms of the agreement.

The parties closed on the first loan on May 10, 2006 and Conestoga extended a second loan to the Miller Boys several weeks later. Both loans were secured by open-end mortgages on the property. The maturity dates for the loans were June 1, 2011, and July 1, 2016, respectively, with an interest rate of 7.250% for each loan. The parties also entered into several assignment agreements in connection with these loans, which were created to secure indebtedness and to ensure the Miller Boys' performance of their obligations under the loans. These agreements granted Conestoga several rights regarding the property, including the right to collect and receive rents from the tenants, the right to enter and maintain the property, and the right to lease the property. However, the agreements explicitly stated that Conestoga had no requirement to act on any of its rights with regard to the property.

By May 2010, the property had sustained losses, and the Miller Boys asked Conestoga to modify the terms of the loans, specifically to defer principal payments until the property could be fully leased. On September 21, 2010, the parties entered into a modification of the loan agreements, whereby the maturity dates were extended to October 5, 2011, the interest rates were reduced 0.9 percentage points to 6.35%, and the monthly payments were reduced. However, the Miller Boys were still unable to make timely payments. Because of the cash flow loss the property was suffering, the Miller Boys requested another modification of the terms of the loan agreements. The parties executed such modifications on April 5, 2011, whereby the interest rates of the loans were reduced to 5.75% and the Miller Boys were required to make interest only

payments, which is what the Miller Boys requested. The amounts of the monthly payments were reduced but the maturity dates remained at October 5, 2011. The parties agreed that, except for the changes listed in the agreements, the remaining terms of the original agreements still governed.

The Miller Boys subsequently defaulted on the loans by failing to make timely payments and never paying the total principal that was due on October 5, 2011. Conestoga did not immediately begin foreclosure proceedings, but offered the Miller Boys a six month extension to extend the maturity on both loans to April 5, 2012. The Miller Boys rejected this offer, and unilaterally proposed to change the interest rate and maturity terms, which Conestoga would not accept. On February 2, 2012, the Miller Boys orally agreed to the extension that Conestoga originally offered, yet refused to sign the agreement with the change in terms. Instead, the Miller Boys asked Conestoga to release Jack Miller and Ari Miller from their personal guarantees, which Conestoga agreed to do. However, Jack and Ari Miller rejected Conestoga's proposal to release the personal guarantees and never made a counterproposal. Subsequently, the parties could not come to an agreement on a change in terms and the Miller Boys never remedied their default.

Conestoga enforced its right to collect rents on January 10, 2012, and demanded rents from [AMG] and OPG Systems, Inc. ("OPG"), the tenants of the property.[1] AMG and OPG never paid any rents to Conestoga. The Miller Boys allege that AMG complained about a sump pump that was causing an odor on the property, yet Conestoga asserts that it was never made aware of this or any other maintenance issues by the Miller Boys or AMG. Aside from demanding rents be paid, Conestoga never took over management of the property or made any repairs, and was unable to enter the

property because the Miller Boys never provided Conestoga with keys or other access.

The Miller Boys understood that by not agreeing to a proposed change in terms with Conestoga, the loans would be in default. The Miller Boys do not dispute that they have not paid the principal, interest, and charges due on the loans' maturity date. Consequently, Conestoga foreclosed on the property and sold it on August 9, 2013. Conestoga has now brought forth the current motion for summary judgment on all claims against it.

_____

[1] OPG Systems, Inc. is the predecessor of Onexcellence, Inc.

Trial Court Opinion, 2/6/2015, at 1-4.

The Miller Boys filed three lawsuits, one against Conestoga (case number 130404218), a second against AMG and Conestoga (case number case Nos. 130404858), and a third against Onexcellence, Inc. and Conestoga (case number 130404863). On or about February 6, 2015, the trial court granted Conestoga's motions for summary judgment in all three cases. The Miller Boys appealed these rulings, and two of these three appeals are presently before this Court (case numbers 130404218 and 130404858). The Miller Boys assert the same two issues for our review and determination in both appeals:

1. Whether the [t]rial [c]ourt erroneously entered summary judgment in favor of [Conestoga] and against Miller Boys when it failed to address obligations that arose after the Bank asserts its right to collect rent.

      2.      Whether genuine issues of material fact exist to preclude the entry of judgment as a matter of law, including whether genuine issues of material fact exist with regard to Miller Boys' damages.

Miller Boys' Brief at 3.

Our standard of review of a trial court's grant of summary judgment is well settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**_Thompson v. Ginkel_**, 95 A.3d 900, 904 (Pa. Super. 2014) (citations omitted).

For their first issue on appeal, the Miller Boys contend that the trial court erred when it ruled that Conestoga had no obligation to collect rent

from the two tenants (AMG and Onexcellence, Inc.) after Conestoga notified these tenants that it was exercising its right to collect rents. According to the Miller Boys, once Conestoga exercised its right to receive rental payments, it then had a contractual duty to take further (unspecified) actions to collect the rent due, and that the rent collected (or due) after Conestoga sent the notices should have been applied to the Miller Boys' outstanding balance due on the loans. Miller Boys' Brief at 10. Rather than collect rent, the Miller Boys argue that Conestoga took no action and instead merely increased the outstanding balance due and charged additional interest, late fees, and penalties. *Id.*

The Miller Boys do not refer this Court to any particular provision of the loan documents that obligated Conestoga to make additional efforts to collect rent from the tenants. Rather, the Miller Boys assert that the obligation springs from the implied duty of good faith and fair dealing. *Id.* at 11. This Court has said that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. 1996) (quoting Restatement (Second) of Contracts, § 205); *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 706-07 (Pa. Super. 2003). But a review of Pennsylvania appellate decisions reflects that we have recognized this implied duty only in limited situations. As we explained in *Creeger*

***Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.***, 560 A.2d 151 (Pa. Super. 1989), although a duty of good faith has been recognized in commercial contracts as well as in contracts between franchisors and their franchisees and between insurers and their insureds, no such duty is generally implied in contracts between lenders and borrowers. ***Id.*** at 153-54 (citing ***Atlantic Richfield Co. v. Razumic***, 390 A.2d 736 (Pa. 1978), ***Loos & Dilworth v. Quaker State Oil Refining Corp.***, 500 A.2d 1155 (Pa. Super. 1985), ***Gray v. Nationwide Mutual Ins. Co.***, 223 A.2d 8 (Pa. 1966), ***Gedeon v. State Farm Ins. Co.***, 188 A.2d 320 (Pa. 1963), and ***Heights v. Citizens National Bank***, 342 A.2d 738 (Pa. 1975)); ***see also*** 13 Pa.C.S.A. § 1304; ***Cable & Associates Ins. Agency, Inc. v. Commercial Nat. Bank of Pennsylvania***, 875 A.2d 361, 364 (Pa. Super. 2005).

The Miller Boys refer us to a decision of the United States District Court for the Eastern District of Pennsylvania, in which that court predicted the Supreme Court of Pennsylvania would conclude that an implied duty of good faith exists in all contracts in Pennsylvania, including those between borrowers and lenders. ***Bedrock Stone and Stuff, Inc. v. Manufacturers and Traders Trust Co.***, 2005 WL 1279148 at *8 (E.D. Pa., May 25, 2005). In ***Bedrock***, the federal district court noted that our Supreme Court adopted section 205 of the Restatement (Second) of Contracts in ***Bethlehem Steel***

*Corp. v. Litton Industries, Inc.*, 488 A.2d 581, 600 (Pa. 1985), and thus

reasoned:

> We find it inconsistent and unworkable to state that there is such a duty in every contract, but then to attempt to limit the application of the implied covenant in certain instances but not others. The covenant is either implied in every contract or it is not. There cannot be any other reasonable interpretation of the adoption by the Supreme Court of Pennsylvania of Section 205 of the Restatement than to apply it equally to every contract. To do otherwise would strain the use and meaning of the word "every" to mean something other than "all".

*Bedrock*, 2005 WL 1279148 at *7.

The *Bedrock* decision is not binding upon this Court. In this regard, it is instructive that the federal court in that case did not rely upon prior precedent from this Court, but rather focused on two decisions of the Philadelphia County Court of Common Pleas. In particular, the federal district court did not cite to this Court's 2002 decision in *Heritage Surveyors & Engineers, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248 (Pa. Super. 2002), in which we reaffirmed our ruling in *Creeger Brick* that the duty of good faith and fair dealing has been recognized only in "limited situations." *Id.* at 1253. We also reaffirmed *Creeger Brick*'s admonition that the duty of good faith and fair dealing "does not compel a lender to

surrender rights which it has been given by statute or by the terms of its contract."[1]  *Id.* (quoting *Creeger Brick*, 560 A.2d at 154).

We need not resolve this issue here, since even if the duty of good faith and fair dealing applies to the present loan documents, it is beyond cavil that the implied duty can never trump the express language of the written contract.  The duty of good faith and fair dealing does not license a court to interpose contractual terms to which the parties never assented, as this would violate the long-standing axiom that a court may "not imply a different contract than that which the parties have expressly adopted." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986); *Greek v. Wylie*, 109 A. 529, 530 (Pa. 1920) ("there can be no implied covenants as to any matter specifically covered by the written terms of the contract itself.").  When it applies, the duty of good faith and fair dealing does not command complete loyalty to the other contracting party, but rather only ensures that the parties are faithful to the spirit and terms of the contract

---

[1]  The Miller Boys note that this Court recognized an exception to the *Creeger Brick* rule in *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999), in which we indicated that while a lending institution generally does not violate the duty of good faith by adhering to its agreements with a borrower, additional "good faith" obligations may be imposed where the parties have a "longstanding relationship." *Id.* at 1059. In *Corestates*, however, we recognized that the "longstanding relationship" there involved a 19-year history between the parties during which the bank had exclusively served the lender's financial needs.  *Id.*  The Miller Boys have not directed us to any evidence to demonstrate that any similar "longstanding relationship" exists with Conestoga.

the parties signed, requiring that discretion, when granted, is exercised reasonably. As the Delaware Court of Chancery put it, the implied duty "seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 440 (Del. Ch. 2012), *aff'd in part, rev'd in part on other grounds*, 68 A.3d 685 (Del. 2013).

In the present case, there is no need to imply terms the parties would have agreed to "if they had thought to address them," since here the parties directly addressed the precise scenario about which the Miller Boys now complain -- namely what actions (if any) Conestoga must take after exercising its right to collect rents from tenants. The assignment of rents agreement provides that Conestoga may, among other things, "send notices to any tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to [Conestoga] or [Conestoga's] agent." Second Amended Complaint, 10/15/2013, ¶ 5 Exhibit B. Immediately thereafter, the agreement (in a section entitled "No Requirement to Act") then states that "the fact that Conestoga shall have performed one or more of the foregoing acts or things shall not require [Conestoga] to do any other specific act or thing." *Id.* As such, the express

language of the loan documents explicitly absolves Conestoga from any obligation to perform the acts that the Miller Boys now claim were required here (i.e., additional efforts to collect rents). Hence, even if the implied duty of good faith and fair dealing applies generally under the facts presented here, it cannot be construed to impose upon Conestoga the obligations the Miller Boys insist that it does.

Finally, the Miller Boys insist that a contrary decision would authorize financial institutions like Conestoga "to act in a predatory manner." Miller Boys' Brief at 15. The Miller Boys claim that Conestoga exercised its right to collect rents with no intention of actually collecting the rents, and that it instead did so solely to collect additional fees, interest, and penalties. *Id.* Whether or not Conestoga's actions can properly be described as "predatory," however, Conestoga acted in all respects in accordance with its rights under the terms of the loan documents signed by the Miller Boys. As this Court has made clear in prior lender-borrower cases, "it cannot be said that a lender has violated a duty of good faith merely because it negotiated terms of a loan which are favorable to itself." *Heritage Surveyors*, 801 A.2d at 1253 (quoting *Creeger Brick*, 560 A.2d at 154).

Moreover, while the Miller Boys claim that Conestoga had no intention of collecting rents from the property's tenants, it offered no evidence in support of this contention in response to Conestoga's motion for summary

judgment. As explained hereinabove, where the non-moving party to a motion for summary judgment bears the burden of proof on an issue, it may not merely rely on unsubstantiated allegations to survive summary judgment, and instead must adduce sufficient evidence on the issue to create a genuine issue of material fact. **Thompson**, 95 A.3d at 904. Based upon our review of the certified record on appeal, the Miller Boys have not done so in this case.

For their second issue on appeal, the Miller Boys argue that the trial court erred in granting summary judgment because genuine issues of material fact remain for consideration regarding the amount of damages suffered as a result of Conestoga's actions. The trial court ruled that the Miller Boys failed to present any evidence of its alleged damages, including no report from a damages expert and no attempt to quantify the amount of any damages suffered. Trial Court Opinion, 2/6/2015, at 7.

Because we agree with the trial court's determination that the Miller Boys did not state a cognizable claim against Conestoga under the terms of the loan documents, the issue of damages would appear to be moot. In any event, we concur with the trial court's analysis. In their Second Amended Complaint (case number 130404218), the Miller Boys claimed unspecified damages against Conestoga, asserting that its actions had "snowballed into financial losses to Miller Boys in excess of two hundred thousand dollars,"

including reputational harm and "jeopardy to its assets." Second Amended Complaint, 10/15/2013, ¶¶ 25, 52. In response to Conestoga's motion for summary judgment, however, the Miller Boys offered no evidence to support these contentions. Even in an affidavit by Jack Miller filed in response to the motion for summary judgment, he merely repeats the contention in the Second Amended Complaint that financial losses have "snowballed" because of Conestoga's actions. Affidavit of Jack Miller in Support of Plaintiff's Response to Motion of Defendant Conestoga Bank for Summary Judgment, 12/22/2014, ¶ 29. In their appellate brief, the Miller Boys likewise have not referred this Court to any supporting evidence, instead merely stating that the "amount of damages Miller Boys suffered as a result of [Conestoga's] failure to collect rent is a genuine issue of material fact." Miller Boys' Brief at 17. Because the Miller Boys have proffered no evidence in support of its damages claims and instead merely rely upon the allegations in their pleadings, the trial court did not err in its ruling on this issue.

Orders affirmed.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/28/2015*

- 14 -